USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  7/20/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                             :
1724982 ALBERTA ULC,                                         :
                                                             :
                                          Plaintiff,         :
                                                             :
                    -against-                                :          1:21-cv-04343-GHW
                                                             :
PARK AVENUE WHOLESALE, INC.,                                 :          MEMORANDUM OPINION
                                                             :              AND ORDER
                                          Defendant.         :
                                                             :
------------------------------------------------------------- X


GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

Defendant Park Avenue Wholesale, Inc. seeks to transfer this trademark infringement case

to the United States District Court for the Western District of New York, where Defendant is

located.  Plaintiff 1724982 Alberta ULC, a Montreal-based company that does not operate in the

Southern District of New York, opposes transfer.  Because Plaintiff's choice of forum is entitled to

little deference given Plaintiff's lack of meaningful presence in this District, and the convenience of

the parties and witnesses weigh in favor of a transfer to the Western District of New York,

Defendant's motion to transfer is GRANTED.

## II.    BACKGROUND

   a.  *Facts*[1]

Plaintiff 1724982 Alberta ULC ("Alberta" or "Plaintiff") was incorporated in Canada and

---

[1]  Unless otherwise noted, the facts are taken from the Complaint and are accepted as true for the purposes of this
motion.  *See Cerussi v. Union Coll.*, 144 F. Supp. 2d 265, 266 (S.D.N.Y. 2001) (accepting as true facts alleged by plaintiff or
otherwise undisputed in deciding motion to transfer).  Moreover, "[i]n deciding a motion to transfer, a court may
consider material outside of the pleadings." *Mohsen v. Morgan Stanley & Co. Inc.*, No. 11-cv-6751 (PGG), 2013 WL
5312525, at *3 (S.D.N.Y. Sept. 23, 2013) (collecting cases).

has its principal place of business in Montreal.  Compl. at ¶ 4, Dkt. No. 8.  Plaintiff, which does

business as "Buffalo," "Buffalo Jeans," and/or "Buffalo David Bitton," owns the family of

trademarks (the "Buffalo Marks") that are at issue in this case.  *Id.* at ¶ 2.  The Buffalo Marks include

the "Buffalo" trademark, the "Buffalo David Bitton" trademark, and the buffalo logo design

trademark:  .  *Id.* at ¶ 10.  Since 1979, Plaintiff has sold men's and women's apparel and

accessories bearing the Buffalo Marks.  *Id* at ¶ 11.  Plaintiff has registered the Buffalo Marks with the

U.S. Patent and Trademark Office ("PTO") and acquired U.S. Trademark Registration Nos.

1,185,897; 2,155,119; 3,561,672; and 1,319,493.  *Id.* at ¶ 13.  Plaintiff is the exclusive owner of the

trademarks.  *Id.*  In broad strokes, the trademarks cover the use of the Buffalo Marks on various

items of men's and women's apparel and accessories.  *Id.*  Plaintiff has invested substantially in

marketing and promoting its brand using the Buffalo Marks.  *Id.* at ¶ 16.

The Buffalo Marks are managed by brand manager Iconix Brand Group, Inc. ("Iconix"),

which performs brand licensing, brand management, and marketing functions in New York City.

Pl.'s Opp'n to Def.'s Mot. to Transfer ("Opp'n") at 1, Dkt. No. 20.  Iconix has a controlling

ownership interest in Plaintiff through its wholly owned subsidiary Iconix CA Holdings, LLC ("ICA

Holdings").  *Id.* at 2.  The principal third-party licensee of the Buffalo Marks, Centric Brands

("Centric"), is also headquartered in New York City.  *Id.* at 4.  Neither Iconix nor Centric are parties

to this suit.

Defendant Park Avenue Wholesale, Inc. ("Park Avenue" or "Defendant") is a New York

corporation with its principal place of business in Lackawanna, New York.  Compl. at ¶ 5.  In this

suit, Plaintiff alleges that Defendant is infringing its trademarks by selling men's apparel using

identical or confusingly similar imitations of the Buffalo Marks (the "Infringing Marks").  *Id.* at ¶ 19.

Defendant is currently the owner of U.S. Trademark Registration No. 5,399,112 for the "BUFFALO

OUTDOORS" mark for use in connection with various items of men's apparel.  *Id.* at ¶ 35.

Defendant has also filed a trademark application to register BUFFALO OUTDOORS for use in

connection with other products.  *Id.* at ¶ 37.  Plaintiff alleges that these trademarks fully incorporate

the Buffalo Marks and has initiated proceedings before the PTO's Trademark Trial and Appeal

Board ("TTAB").  *Id.* at ¶¶ 39-40.  Plaintiff stated that it would move to suspend the TTAB

proceedings simultaneously with the filing of this case.  *Id.*

        b.   *Procedural History*

Plaintiff initiated this action on May 13, 2021.  Dkt. No. 1.  Plaintiff filed the operative

complaint on May 14, 2021, asserting claims under the Lanham Act, 15 U.S.C. § 1114(1)(a), and

claims of trademark infringement, unfair competition, dilution, injury to business reputation and

deceptive trade practices under New York law.  On June 8, 2021, Defendant moved to transfer this

case to the United States District Court for the Western District of New York pursuant to 28 U.S.C.

§ 1404(a).  Dkt. No. 13.  Plaintiff filed its opposition on June 22, 2021, Dkt. No. 20, and Defendant

filed its reply on June 29, 2021, Dkt. No. 23.

## III.   LEGAL STANDARD

Section 1404(a) allows a district court to transfer a case for the convenience of parties and

witnesses to "any other district or division where it might have been brought" if doing so is "in the

interest of justice."  28 U.S.C. § 1404(a).  The Court evaluates a potential transfer in two steps.  "The

initial inquiry is whether the case could have been brought in the proposed transferee district . . . ."

*Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 285 (S.D.N.Y. 2004).  "An action might have

been brought in the forum to which the movant seeks to transfer it if subject matter jurisdiction,

personal jurisdiction, and venue would have been proper in the transferee court at the time of

filing."  *City of Pontiac Gen. Employees Ret. Sys. v. Dell Inc.*, No. 14-cv-3644 (VSB), 2015 WL 12659925,

at *2 (S.D.N.Y. Apr. 30, 2015) (internal quotation marks omitted).

If that threshold inquiry is satisfied, the Court proceeds to the second step. *See id.* at *3. At step two, the Court considers the following factors to determine whether to grant the requested transfer:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Multiwave Sensor Inc. v. Sunsight Instruments, LLC*, No. 1:16-cv-1361-GHW, 2017 WL 1498058, at *6 (S.D.N.Y. Apr. 26, 2017).

"These factors are not an exhaustive list and instead 'serve as guideposts to the Court's informed exercise of discretion.'" *Pausch Med. GmbH v. Pausch LLC*, No. 14-cv-1945 PAC, 2015 WL 783365, at *1 (S.D.N.Y. Feb. 24, 2015) (quoting *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)). "There is no rigid formula for balancing these factors and no single one of them is determinative." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). Put differently, "weighing the balance is essentially an equitable task left to the Court's discretion." *Citigroup Inc.*, 97 F. Supp. 2d at 561 (internal citation and quotation marks omitted). The movant bears the burden of establishing that transfer is warranted by clear and convincing evidence. *See New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) ("It is . . . appropriate that the district courts in our Circuit have consistently applied the clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion.").

Plaintiff has alleged violations of the Lanham Act. The Lanham Act "impose[s] liability for unpermitted 'use in commerce' of another's mark which is 'likely to cause confusion, or to cause

4

mistake, or to deceive' 'as to the affiliation . . . or as to the origin, sponsorship or approval of his or

her goods or services . . . by another person.'" *Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 128 (2d

Cir. 2009) (quoting 15 U.S.C. § 1114; *id.*; § 1125(a)(1)(A) (brackets omitted)).

"The Lanham Act was intended to make 'actionable the deceptive and misleading use of

marks,' and 'to protect persons engaged in . . . commerce against unfair competition.'" *Dastar Corp.*

*v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003) (citing 15 U.S.C. § 1127) (omission in

original). The Lanham Act's trademark infringement provision creates a cause of action against:

> [a]ny person who . . . use[s] in commerce any reproduction, counterfeit, copy, or
> colorable imitation of a registered mark in connection with the sale, offering for sale,
> distribution, or advertising of any goods or services on or in connection with which
> such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a).

To prevail on a trademark infringement claim under the Lanham Act, "a plaintiff must show

(1) that it has a valid mark that is entitled to protection under the Act, and (2) that use of the

defendant's mark infringes, or is likely to infringe, the mark of the plaintiff," meaning that use of the

mark "creates a likelihood of confusion." *Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1508-09

(2d Cir. 1997). "In order to be confused, a consumer need not believe that the owner of the mark

actually produced the item and placed it on the market. The public's belief that the mark's owner

sponsored or otherwise approved the use of the trademark satisfies the confusion requirement."

*Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 383 (2d Cir. 2005) (internal quotation marks omitted).

To determine likelihood of confusion, courts in this Circuit consider the factors established

in *Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492 (2d Cir. 1961): (1) strength of the trademark;

(2) similarity of the marks; (3) proximity of the products and their competitiveness with one another;

(4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market

of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the

imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication

of consumers in the relevant market.  *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115

(2d Cir. 2009).  "The application of the *Polaroid* test is not mechanical, but rather, focuses on the

ultimate question of whether, looking at the products in their totality, consumers are likely to be

confused."  *Id.*  (internal quotation marks omitted).

## IV.    DISCUSSION

The parties do not dispute the fact that this action might have been brought in the Western

District.  *See* Opp'n at 7.  The Court therefore turns to the second step of the transfer inquiry.

### A.  The Convenience of the Witnesses Favors Transfer

"Courts typically regard the convenience of witnesses as the most important factor in

considering a § 1404(a) motion to transfer."  *Sentegra, LLC v. ASUS Computer Int'l,* No. 1:15-CV-

3768-GHW, 2016 WL 3093988, at *2 (S.D.N.Y. June 1, 2016).  In conducting this analysis, the

Court "weighs more heavily the convenience of non-party witnesses than party witnesses."  *McGraw-*

*Hill Companies Inc. v. Jones*, No. 12-cv-7085 (AJN), 2014 WL 988607, at *7 (S.D.N.Y. Mar. 12, 2014).

The party requesting transfer "must provide the Court with a detailed list of probable witnesses who

will be inconvenienced if required to testify in the current forum."  *Kiss My Face Corp. v. Bunting*,

No. 02-CIV-2645, 2003 WL 22244587, at *2 (S.D.N.Y. Sept. 30, 2003).  The Court "does not merely

tally the number of witnesses who reside in the current forum in comparison to the number located

in the proposed transferee forum," but rather "must qualitatively evaluate the materiality of the

testimony that the witnesses may provide."  *Herbert*, 325 F. Supp. 2d at 286.  "In a trademark

infringement action, the most critical witnesses may be those officers and employees who were

involved in . . . [the] sale of the [allegedly] infringing products."  *Everlast World's Boxing Headquarters*

*Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013) (quotation omitted)

Defendant has identified eleven key witnesses that it may call in this case, six of whom are

party witnesses and five of whom are non-party witnesses.  Decl. of Todd Andolino ("Andolino

Decl.") ¶ 6, Dkt. No. 15.  The six party witnesses include Defendant's President and CEO, Vice

President, e-commerce manager, supervisor, marketing supervisor, and a senior salesperson.  *Id.*

The five non-party witnesses are two former managers, an e-commerce retailer and customer, and

two local customers.  *Id.*  All of those witnesses reside in the Western District of New York except

for the senior salesperson, Jack Titus, who resides in the Northern District of New York, close to

the Western District.  Opp'n at 3; Andolino Decl. ¶¶ 4, 6(k).  The testimony of Defendants'

anticipated witnesses is highly relevant to the claims at issue, as theys are Defendant's principals,

employees, former employees, and customers who can speak to the key issues in this case including:

> the manner in which Park Avenue markets and sells allegedly infringing BUFFALO
> OUTDOORS goods; the price points for those goods; the types of customers to
> which BUFFALO OUTDOORS goods are sold; the adoption of the BUFFALO
> OUTDOORS trademark; Park Avenue's revenues and profits generated on such
> goods; consumer perceptions of BUFFALO OUTDOORS goods; and the absence of
> any actual confusion between the parties' products and trademarks.

Mem. in Support of Def.'s Mot. To Trans. ("Mov. Br.") at 4, Dkt. No. 16.

Defendant also asserts the affirmative defense of laches, arguing that it has used the

BUFFALO OUTDOORS trademark for many years prior to this action.  *Id.* at 5.  "Laches is an

equitable defense which bars injunctive relief where a plaintiff unreasonably delays in commencing

an action."  *Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.*, 17 F.3d 38, 44 (2d Cir. 1994).  The

testimony from these eleven witnesses, the majority of whom allegedly worked for Defendant or

bought BUFFALO OUTDOORS products for many years, is directly relevant to Defendant's

defense.  The Court assigns substantial weight to the convenience of witnesses who make up the

bulk, if not the entirety, of Defendant's case.

For its part, Plaintiff argues that, while it will likely call party witnesses from its Montreal

office, it also anticipates eliciting testimony from witnesses at Iconix and Centric who are based in

this District.  Opp'n at 8-9.  Plaintiff contends that "[t]he core question in this trademark dispute is

whether Defendant's Infringing Marks are likely to cause consumer confusion," and that the

witnesses best positioned to provide relevant testimony are largely concentrated in this District. *Id.* at 8.  Plaintiff argues that its witnesses at Iconix and Centric can testify to "the strength of the B[uffalo] Marks and their similarity to Defendant's infringing products; licensing of B[uffalo] Marks and how licensed products are similar to Defendant's infringing products; the target consumers for B[uffalo] branded products . . . and the likelihood of consumer confusion." *Id.* at 9.  Specifically, Plaintiff names three executives at Iconix and the CEO at Centric as possible witnesses.  Decl. of Ryan Sainsott ¶ 19, Dkt. No. 22.  Plaintiff further names the Buffalo Marks brand licensees for children's wear and eyewear, Five Star Apparel and Tura, Inc., as two possible non-party witnesses who can testify as to the quality and sale of these Buffalo Marks products.  *Id.*  Both Five Star Apparel and Tura, Inc., are based in this District.  *Id.* at ¶¶ 13, 15.

The Court must now weigh the convenience of Defendant's witnesses in the Western District against the convenience of Plaintiff's witnesses in this District.  The Court affords greater weight to the testimony of Defendant's witnesses because their predicted testimony is of greater material importance than that of Plaintiff's witnesses.  Though Plaintiff correctly notes that a key issue is the likelihood that the Infringing Marks may cause customer confusion, the crux of this case rests on Defendant's actions in utilizing, producing, and ultimately selling the Infringing Marks.  The parties' filings make clear that Defendant's non-party witnesses in the Western District can better speak to Defendant's actions than Plaintiff's non-party witnesses.  While the expected testimony by Plaintiff's non-party witnesses will likely be helpful in determining the likelihood of confusion between the two brands, it does not speak as directly to the key issue of Defendant's actions in using the Infringing Marks.  Indeed, two of Plaintiff's proposed non-party witnesses, the licensees at Five Star Apparel and Tura, Inc., both propose to offer testimony regarding products that are not directly referenced in Plaintiff's complaint.  The Court therefore concludes that the convenience of the witnesses favors transferring this case to the Western District.

### B.   The Convenience of the Parties Favors Transfer

The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant. *See Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014). This factor favors transfer when, as here, the transferee forum is the movant's principal place of business and the non-movant is located outside of both the transferor and transferee forums. *See id.* Litigating in this District would substantially inconvenience Defendant. Defendant's principal place of business is in Lackawanna, which is in the Western District. As explained above, the entirety of Defendant's case is there, including nearly all of its witnesses. Because Defendant is a small, family-run company, the time it spends traveling to this District will negatively impact its ability to run its business. Andolino Decl. at ¶ 7. Accordingly, Defendant would be considerably less inconvenienced if this case were to be transferred to the Western District.

Plaintiff contends that a transfer to the Western District will substantially inconvenience, citing the additional costs required to transport its prospective witnesses who reside in this District. To transfer this case, Plaintiff says, would be to simply shift Defendant's inconvenience to Plaintiff. Plaintiff's argument, while not without merit, does not dissuade the Court from concluding that the convenience of the parties favors transfer, if only slightly.

It is true that "[a] mere shifting of inconveniences [between the parties] is not sufficient to transfer a case." *Casper Sleep, Inc. v. Nectar Brand LLC*, No. 18-cv-4459 (PGG), 2019 WL 4727496, at *6 (S.D.N.Y. Sept. 27, 2019) (quoting *Walker v. Jon Renau Collection, Inc.*, 423 F. Supp. 2d 115, 118 (S.D.N.Y. 2005). Here, however, the proposed transfer would not merely shift inconvenience from one party to another; instead, it would decrease the overall inconvenience suffered. As the Court has observed, almost the entirety of Defendant's prospective proof lies in the Western District; consequently, a transfer to that district will substantially reduce Defendant's burden.

9

By contrast, Plaintiff's inconvenience is, to a substantial extent, unaffected by a transfer:  as Plaintiff concedes, litigating this case in either district will require it to expend the funds necessary to transport witnesses from Montreal to a federal courthouse in New York State.  The federal courthouse in Rochester, New York is substantially closer to Montreal than Foley Square.  As to Plaintiff's potential witnesses that reside in this District, requiring those witnesses to travel to Buffalo or Rochester will undoubtedly impose a greater inconvenience than permitting them to testify in Manhattan.  The Court finds, however, that whatever inconvenience Plaintiff's non-party witnesses might suffer because of the transfer is outweighed by the burden that will be lifted from Defendant should this case be transferred.  *See Sentegra, LLC*, 2016 WL 3093988, at \*4 (finding that transferring the case to the district where the defendant had its principal place of business would increase defendant's convenience without causing the plaintiff to suffer inconvenience because it was located outside of both the transferor and transferee forums); *see also Tole v. Glenn Miller Prod., Inc.*, No. 12-cv-6660 (NRB), 2013 WL 4006134, at \*3 (S.D.N.Y. Aug. 6, 2013) (finding party convenience factor in favor of transfer to defendant's principal place of business where non-forum plaintiff "must travel a substantial distance regardless of whether transfer is granted.").  Accordingly, the Court finds that the parties' convenience favors transfer.

### C.  The Location of Relevant Documents Slightly Favors Transfer

"The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents." *Am. S.S. Owners Mut. Prot. and Indem. Ass'n v. Lafarge N. Am.*, 474 F. Supp. 2d. 474, 484 (S.D.N.Y. 2007); *see also McGraw-Hill Companies Inc.*, 2014 WL 988607, at \*9.  However, "it is improper to ignore [it] entirely." *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011).  "[I]n infringement cases, it makes sense that 'the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weigh in favor of transfer to that location.'" *ESPN, Inc. v.*

10

*Quiksilver, Inc.*, 581 F. Supp. 2d 542, 548-49 (S.D.N.Y. 2008) (discussing motion to transfer in

trademark infringement action) (quoting *Millennium, L.P. v. Hyland Software, Inc.,* No. 03 Civ.

3900(DC), 2003 WL 22928644, at *4 (S.D.N.Y. Dec. 10, 2003) (granting motion to transfer patent

infringement action)).

Defendant represents that the key documents regarding its use of the BUFFALO

OUTDOORS trademark are located and maintained in the Western District, which weighs slightly

in favor of transfer.  Reply at 10; Andolino Decl. at ¶ 5.  Plaintiff in turn argues that because both

parties claim there are necessary files in their preferred forum, and that in the digital age those files

are easily portable, this factor does not weigh heavily in favor of or against transfer.  Opp'n at 11.

The Court concludes that this factor slightly favors transfer because Defendant's relevant

documents and records are of greater material significance than Plaintiff's, given the nature of the

claims at issue in this case, and those documents are located in the Western District.  *See Sentegra,*

*LLC*, 2016 WL 3093988, at *5.

### D.  The Locus of Operative Facts Favors Transfer

"The location of operative facts is a primary factor in determining a § 1404(a) motion to

transfer."  *Rosen v. Ritz-Carlton Hotel Co. LLC*, No. 14-cv-1385 RJS, 2015 WL 64736, at *4 (S.D.N.Y.

Jan. 5, 2015) (quoting *Whitehaus Collection v. Barclay Prod., Ltd.*, No. 11 Civ. 217(LBS), 2011 WL

4036097, at *2 (S.D.N.Y. Aug. 29, 2011)).  "In actions alleging trademark infringement or unfair

competition, courts in this district have held the locus of operative facts to be in the initially chosen

forum if acts of infringement, dilution, or unfair competition occur in that forum."  *Kiss My Face*,

2003 WL 22244587, at *3; *see also Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.*, No. 00-cv-

1971 (AGS), 2000 WL 1290585, at *7 (S.D.N.Y. Sept. 13, 2000)  ("Here, the allegation is that [the

defendant] makes false statements and competes unfairly in selling its discount cards in this District

via the internet and through businesses located here.  The locus of operative facts is thus in this

District, even if [the defendant's] principal place of business is elsewhere or [it] sells its discount

cards elsewhere."). "Other courts in this Circuit have questioned this rule, finding in-district sales of

the infringing product alone to be insufficient to justify a finding that the initially chosen forum is

the locus of operative facts." *Alcon Lab'ys, Inc. v. Allied Vision Grp., Inc.*, No. 18-cv-02486 (MKB),

2018 WL 10550777, at *15 (E.D.N.Y. Dec. 22, 2018) (citing *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d

16, 20 (S.D.N.Y. 2012) (collecting cases)). According to those courts, "'the location where the

allegedly infringing product was designed and developed can be a relevant consideration.'" *Id.*

(quoting *Confectionary Arts Int'l, LLC v. CK Products LLC*, No. 16-cv-2015, 2018 WL 1141357, at *11

(D. Conn. Mar. 1, 2018)); *see also Sheree Cosms., LLC v. Kylie Cosms., LLC.*, No. 18-cv-9673 (VEC),

2019 WL 3252752, at *3 (S.D.N.Y. July 19, 2019) (concluding that "the locus of operative facts . . .

depends on the location of the allegedly unlawful labeling").

     Here, Defendant is not only based in the Western District, but the design and affixing of the

infringing marks occurred in that District. *See* Andolino Decl. at ¶¶ 3-4. That District, therefore, is

the situs of facts "regarding the design and development of the accused products . . . and the

knowledge of the employees involved in that process." *CYI,* 913 F. Supp. 2d at 21. Those are

relevant considerations in determining the locus of operative facts, particularly where, as here,

infringing products were allegedly sold in both this District and the Western District. Accordingly,

the Court finds that the locus of operative facts lies in the Western District.

### E. The Availability of Process to Compel the Attendance of an Unwilling Witness is Neutral

     "[I]f neither party asserts that a witness will be unwilling to testify voluntarily, the availability

of process to compel testimony is irrelevant to the transfer analysis." *Rosen*, 2015 WL 64736, at * 4.

Neither Plaintiff nor Defendant assert that a witness would be unwilling to testify in either forum.

Accordingly, this factor is neutral.

### F.   The Relative Means of the Parties is Neutral

"Where disparity exists between the parties, such as an individual plaintiff suing a large

corporation, the relative means of the parties may be considered."  *Coast to Coast Fabrics, Inc. v. Exact*

*Change Only Corp.*, No. 04-cv-7300 (DAB), 2006 WL 846716, at *5 (S.D.N.Y. Mar. 29, 2006)

(alterations omitted) (quoting *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998)).

Defendant argues that this factor is either neutral or weighs slightly in its favor due to the smaller

size of Defendant's family-run company in comparison with Plaintiff's larger corporation.  Mov. Br.

at 9.  Plaintiff argues this factor is neutral because Defendant has not established that it would suffer

undue financial burden absent a transfer.  Opp'n at 15; *see MasterCard Int'l, Inc. v. Lexcel Solutions,*

*Inc.*, No. 03-cv-7157 (WHP), 2004 WL 1368299, at *7 (S.D.N.Y. June 16, 2004) ("A party arguing

against or for transfer because of inadequate means must offer documentation to show that transfer

(or the lack thereof) would be unduly burdensome to [its] finances.").  The parties concede,

however, that "the relative means of the parties is not entitled to great weight when the parties are

both corporations, as here."  Mov. Br. at 9; Opp'n at 15.  While Defendant undoubtedly would incur

substantial costs if this case were to remain in this District, Defendant has not shown with

specificity that those costs amount to an undue financial burden, especially in comparison to those

Plaintiff will incur.  The Court therefore finds that this factor neither favors nor disfavors transfer.

### G.  The Forum's Familiarity with the Governing Law is Neutral

"Familiarity with the governing law as a factor in determining transfer of venue is generally

given little weight in federal courts."  *Multiwave Sensor Inc.*, 2017 WL 1498058, at *8.  The parties

agree that this factor is neutral in the transfer analysis.  Because "any district court may handle a

patent case with equal skill," the Court finds this factor to be neutral.  *Smart Skins LLC v. Microsoft*

*Corp.*, No. 14-cv-10149 (CM), 2015 WL 1499843, at *11 (S.D.N.Y. Mar. 27, 2015) (internal quotation

marks and citation omitted).

## H. Plaintiff's Choice of Forum Does Not Weigh Against Transfer

"A plaintiff's choice of forum is entitled to considerable weight and is generally not disturbed unless the balance of the factors strongly favors transfer." *McGraw-Hill*, 2014 WL 988607, at \*7. Where "the forum selected is not plaintiff's home forum or the place where the operative facts of the action occurred," however, "this diminishes the weight assigned to this factor." *Id.*; *see also Multiwave*, 2017 WL 1498058, at \*8 (explaining that, where a case's operative facts "have few meaningful connections to the plaintiff's chosen forum . . . the importance of the plaintiff's choice measurably diminishes.") (internal citation, omission, and quotation marks omitted); *Hix v. Morgan Stanley & Co. LLC*, No. 15-cv-217 (LTS) (JCF), 2015 WL 1726548, at \*2 (S.D.N.Y. Apr. 15, 2015) ("[A] plaintiff's choice of forum is given less deference when it is not her home district.").

Plaintiff is not a resident in this District—it is a Canadian corporation that is based in Montreal, Canada. Compl. at ¶ 4. Plaintiff argues that it has substantial business operations and employees in this District through Iconix that are sufficient to validate Plaintiff's choice of forum. Plaintiff relies heavily on *ESPN, Inc.*, in which the district court explained that

> ESPN is a Delaware corporation whose principal place of business is Bristol, Connecticut. The Southern District of New York is not plaintiff's home forum—the District of Connecticut is. However, ESPN has sufficiently established that many of its operations, including those germane to this case, are carried out in New York City, and that most of its potential witnesses work in New York. [The court is], therefore, inclined to give considerable weight to plaintiff ESPN's choice of forum, and only to disturb it if the other factors weigh strongly in favor of transfer.

*ESPN*, 581 F. Supp. 2d at 551.

But *ESPN* is distinguishable from the present action: while the plaintiff in that case rested its argument on its own involvement with the chosen forum, here, Plaintiff points not to its involvement but to that of its corporate parent Iconix, a non-party to this action. Consequently, while the operations of Iconix and its employees do suggest that Plaintiff is not a stranger to this forum, Plaintiff has not established a connection with this District sufficient to entitle its choice of

14

forum to substantial weight. Accordingly, Plaintiff's choice of forum is entitled to little deference

and limited weight in the Court's analysis.

### I.   The Interest of Justice Is Neutral

"The Court's consideration of whether transfer is in the interest of justice is based on the

totality of the circumstances, and relates primarily to issues of judicial economy[.]" *Indian Harbor Ins.*

*Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 407 (S.D.N.Y. 2005) (internal quotation marks and

citations omitted). "While relative calendar conditions are a consideration in deciding section

1404(a) motions, they are never a factor to which great weight is assigned." *DiPizio v. Empire State*

*Dev. Corp.*, No. 1:15-cv-5339-GHW, 2015 WL 5824704, at *9 (S.D.N.Y. Oct. 5, 2015) (quoting

*Artoptic Int'l Corp. v. Rio Optical Corp.*, No. 91-cv-1270 (JFK), 1992 WL 170674, at *2 (S.D.N.Y. July 8,

1992)). Furthermore, "[w]hen a case is in its earliest stages, it is generally not inefficient to transfer

the case." *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 441 (S.D.N.Y. 2018).

Defendant argues this factor is either neutral or slightly favors Defendant because the

proposed transferee district is the center of gravity of the litigation and is closer to the parties'

principal places of business. Mov. Br. at 9-10. Plaintiff argues that both docket conditions and trial

efficiency in the Western District, as opposed to this District, disfavor of transfer, and further noting

that as of March 31, 2021 the median disposition time in a civil matter in the Western District (15.1

months) was more than twice the amount of disposition time in this District (6.7 months). Opp'n at

14. Because this case is in its initial stages and the Court ascribes little weight to the differences in

the calendar conditions between this District and the Western District, this factor is neutral.

### V.   CONCLUSION

After weighing the factors set forth above, the Court concludes that Defendant has met its

burden of demonstrating by clear and convincing evidence that transfer is appropriate. Of the nine

factors that the Court has considered, none weigh against transfer and several weigh in its favor.

The Court concludes that transferring this case to the Western District would serve the interests of justice.  Accordingly, Defendant's motion to transfer venue to the U.S. District Court for the Western District of New York is GRANTED.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 13 and to transfer this case to the Western District of New York without delay.

SO ORDERED.

Dated: July 20, 2021
       New York, New York

_____
GREGORY H. WOODS
United States District Judge

16